### Brown *vs.* Purviance.—June, 1828.

A master is answerable for all injuries arising from the negligence, or unskilfulness of his servant in executing duties assigned him; but when he abandons his duty, and wilfully becomes a wrong-doer, the master is exempt from all responsibility for such wrongful acts.

B, the harbour-master of the city of *Baltimore*, acting in obedience to a lawful order of the board of health of that city, ordered a vessel, belonging to the plaintiff, to be removed from a wharf, and moored in the stream. He employed C, to perform that duty, who having finished it, with his associates, hired for the purpose aforesaid, returned from the vessel to the shore, in a boat belonging to her, which they there abandoned, and was lost to the plaintiff. The boat was demanded of B by the plaintiff, and he having omitted to return her, an action of trover was brought against him—*Held,* that from the time the vessel was moored in the stream, C ceased to be B's agent, and that for no acts of his or their consequences after that period was he responsible.

APPEAL from *Baltimore* County Court. This was an action of trover to recover the value of a *stern-boat*, brought by the appellee against the appellant. The general issue was pleaded.

At the trial the plaintiff, (the now appellee,) offered in evidence, that about the 1st of September 1819, he was possessed, as owner of the brig called *Strong*, then lying at *Jackson's* wharf in the city of *Baltimore*, and that there was a stern-boat belonging to the said brig worth $60; and that the defendant, (now appellant,) then was the harbour-master of that part of the port of *Baltimore* where the said brig lay at her moorings; that the board of health of the city of *Baltimore*, acting within the scope of their authority, ordered all vessels lying at the different wharfs in that part of the port of *Baltimore* to be moved into the stream; and that it was the duty of the defendant or harbour-master to promulgate the orders of the board of health, and to have them executed. That the board of health did order the said brig to be moved from *Jackson's* wharf into the stream, and that the defendant did make the said order known. The plaintiff further offered in evidence, that there was not at that time any officers or crew attached to the said brig, and that on the 10th of September 1819, one *Bragger* did move the said brig into the stream. And that *Bragger*, and his assistants, returned to another part of the harbour in the boat, and tied her there, and that she was afterwards lost. The plaintiff also offered in evidence, that previous to the institution of this suit, he had demanded the return of the said boat from the defendant; and that the said *Bragger*, and his assistants, were employed by the defendant, as harbour-master, for the purpose of executing the orders of the board of health; and that in the removal of the said brig and boat as aforesaid, the said *Bragger*, and his assistants, acted as agents of the defendant, in his capacity of harbour-master. The plaintiff further offered in evidence, that after the said brig had been moored in the stream about two weeks, the plaintiff took possession of her, but that the boat was missing from the time that she was left by the said *Bragger*, and his assistants, as aforesaid, and has not since been found. The defendant then prayed the

opinion and direction of the court to the jury, that upon the facts so offered in evidence, the plaintiff was not entitled to recover· Which prayer and direction the Court, [*Archer*, Ch. J. and *Hanson* and *Ward*, A. J.] refused to give; but were of opinion, and so directed the jury, that upon the evidence, if they believed the same, the plaintiff was entitled to recover. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued at June term 1827, before BUCHANAN, Ch. J. and EARLE, STEPHEN, and DORSEY, J.

*Scott*, for the Appellant, contended, 1. That there was no such possession of the stern-boat mentioned in the declaration and bill of exceptions shown in the defendant below, as will sustain this action. 2. That if there was any such possession of the said boat by any person, as could sustain and be the foundation of an action of trover, that possession was in *Bragger*, and not in the defendant. 3. That the defendant, acting within the scope of his lawful authority, the consequential loss of the boat as to him, was *damnum absque injuria*. 4. That *Bragger* had no authority from the defendant, after mooring the brig in the stream, for leaving the boat at the wharf. 5. That the defendant was not responsible for any act of *Bragger* beyond his authority; but that *Bragger* himself must answer for it. He cited 2 *Wheat. Selw. N. P.* 1050, 1059, 1060, 1068, 1073, 1074, 1075, 1076. *Mair v Glennis*, 4 *Maule & Selw.* 250. 2 *Phill. Evid.* 117, 121.

*Williams*, (District Attorney of U. S.) for the Appellee.

*Curia adv. vult.*

DORSEY, J. at this term, delivered the opinion of the Court. Before adverting to the question of law which arises in this case, it is necessary to determine, whether the act complained of be the result of negligence or unskilfulness in the servant of the appellant, in performing the task imposed on him by his employer, or be the wilful outrage of the servant, as a wrongdoer? That it was the latter, is, we think, clearly established by the facts stated in the bill of exceptions. *Brown*, the har-

bour-master, acting in obedience to a lawful order of the board of health of the city of *Baltimore*, employs *Bragger*, as his servant or agent, to move the brig into the stream. In this he acted in the usual course of his duty; the services of the harbour-master in person, being in such cases out of the question. *Bragger* removes the vessel into the stream, (where she appears to have been safely moored;) from that moment, *functus officio*, he ceased to be the agent of *Brown*. For no acts of his, or their consequences, after that period, can *Brown*, upon any principle of law, be made liable. As well might an action be instituted against him, for the forcible or unauthorised seizure, by *Bragger*, of the boat of any third person, before the removal of the brig, but for the purpose of accomplishing that object, as it may be on the present occasion; or, with as much propriety, might *Brown* be charged for the injury done to the appellee, if *Bragger* and his associates, after mooring the brig in the stream, had turned round and set her on fire, or plundered her of her tackle, apparel and furniture. But suppose the brig had not been moored in the stream, and *Bragger* and his crew had not only run off with the boat, but the brig also; would it be pretended that *Brown* could be made responsible for such an outrage? If he could, from a mere ministerial officer of a corporation, you must convert him into a common carrier, amenable for all accidents, save "the acts of God and the king's enemies."

The nature of the liability, to which a master is subjected for the acts of his servant, is so fully and satisfactorily settled in the case of *M'Manus v Crickett*, 1 *East*, 106, that courts of justice should rarely be troubled with cases of this kind. The rule is simply this—the master is answerable for all injuries arising from the negligence or unskilfulness of his servant in executing duties assigned him; but when he abandons his duty, and wilfully becomes a wrong-doer, the master is exempt from all responsibility for such wrongful acts.

JUDGMENT REVERSED.